UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

Securities and Exchange Commission,

    Plaintiff,

    v.

Kan King Wong and
Charlotte Ka On Wong Leung,

    Defendants.

Civil Action No.

07-CV-3628

---

### DECLARATION OF JASON M. ANTHONY PURSUANT TO LOCAL RULE 6.1(d) AND IN SUPPORT OF PLAINTIFF'S MOTION

I, JASON M. ANTHONY ("Declarant"), pursuant to 28 U.S.C. §1746, declare as follows:

1. I am over the age of 18 years, and am competent to testify to the facts set forth in this declaration.

2. I am an attorney with the Division of Enforcement of the Securities and Exchange Commission ("Commission"). I am a member in good standing of the Bar of the State of California and the District of Columbia.

3. I submit this Declaration pursuant to Local Rule 6.1(d) in support of the Commission's Emergency Motion For An *Ex-Parte* Temporary Restraining Order Freezing Assets And Granting Other Relief And For An Order To Show Cause Why The Asset Freeze Should Not Continue (the

"Application"). Defendants in this litigation are Kan King Wong and Charlotte Ka On Wong Leung ("Defendants"), residents of Hong Kong.

4. The Commission's Application requests an Order granting the Commission (1) a temporary restraining order freezing Defendants' assets, (2) an order requiring Defendants to show cause why their assets should not remain frozen until the conclusion of this litigation, (3) an order for expedited discovery, (4) an order authorizing alternative means for service of process, and (5) an order preventing document alteration or destruction. The Commission makes this Application based on highly suspicious purchases and sales of Dow Jones Company, Inc. ("Dow Jones") securities by Defendants trading in Merrill Lynch & Co. ("Merrill Lynch") account XXXXX-8105. These shares are currently held at Merrill Lynch in account numbers XXXXX-8105 and XXXXX-0D46 (collectively the "Merrill Lynch Accounts").

5. The Commission is proceeding *ex-parte* in this matter because if the proceeds from Defendants' suspicious trading in Dow Jones securities, as described in the Commissions' papers, are not immediately frozen Defendants are highly likely to dissipate the funds beyond the jurisdiction of the courts of the United States of America.

I. THE COMMISSION'S INVESTIGATION

6. The Commission's Division of Enforcement commenced an informal inquiry concerning trading in the securities of Dow Jones on May 1, 2007,

and it continues to investigate this matter. I am the attorney that opened the investigation and the one primarily responsible for the continuing investigation. I first learned about Defendants' highly suspicious trading in Dow Jones securities on the afternoon of May 4, 2007.

7. I base this Declaration upon personal knowledge obtained since May 1, 2007 and upon my review of information collected during the investigation.

## II. DEFENDANTS

8. Defendants Kan King Wong and his wife Charlotte Ka On Wong Leung are residents of Hong Kong. Their address is Flat C, 20/F, The Albany, 1 Albany Road, Mid-Levels, Hong Kong.

9. Defendants jointly hold two Merrill Lynch accounts (collectively "Defendants' Merrill Lynch Accounts").

10. Defendants opened the Defendants' primary Merrill Lynch Account on May 12, 2004. At the time the account was opened, Defendants reported a combined net worth of $1.9 million.

## III. DOW JONES

11. Dow Jones is a Delaware corporation headquartered at 200 Liberty Street, New York, New York, 10281. Dow Jones is a provider of global business and financial news through multiple channels of media, including The Wall Street Journal, Barrons, Down Jones Newswires, Dow Jones Indexes and MarketWatch.com.

12. At all times relevant to this case, Dow Jones's stock was registered with the Commission pursuant to Section 12(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78l(g), and traded on the New York Stock Exchange ("NYSE") under the symbol "DJ".

### IV. BACKGROUND ON DEFENDANTS' TRADING IN ADVANCE OF THE ANNOUNCEMENT OF NEWS CORPORATION'S BID FOR DOW JONES

13. Between April 13 and April 30, 2007, 415,000 shares of Dow Jones were purchased in Defendants' Merrill Lynch Accounts at an approximate cost basis of $15,023,215. Defendants' average per share cost basis on these shares was approximately $36.20. These Dow Jones shares were primarily purchased using a combination of funds transferred into the account and margin loans.

14. The table below summarizes Defendants' initial Dow Jones stock purchases on April 13, 16 and 17, 2007:

| Date | Shares | Cost per share | Cost Total |
|---|---|---|---|
| 13 Apr. 07 | 74,400 | $34.849 | $2,592,774 |
| 16 Apr. 07 | 17,000 | $35.048 | $595,824 |
| 17 Apr. 07 | 108,600 | $36.710 | $3,986,730 |
| **Totals** | **200,000** | | **$7,175,328** |

15. Because the purchases took three days to clear, Defendants' had three days to ensure that they had sufficient funds in their accounts. At the beginning of April, Defendants total account value was $1.2 million. Only $433,000 of this total was cash or cash equivalents, available for securities purchases. In the days following the purchases, various wire transfers were made into Defendants' Merrill Lynch Accounts to fund the Dow Jones purchases.

16. On April 18, 2007, Defendant Charlotte Ka On Wong Leung's father, Michael Leung Kai Hung, transferred $3,188,600 million into Defendants' Merrill Lynch Accounts. The amount transferred corresponds nearly dollar-for-dollar to the cost of the Dow Jones securities purchases on April 13 and 16, 2007. This transfer fell within the three-business day closing window for these purchases.

17. On April 20, 2007, an unknown individual transferred $3,986,727 million into Defendants' Merrill Lynch Accounts from JP Morgan International Bank in Brussels, Belgium. The amount transferred corresponds nearly dollar-for-dollar to the cost of the Dow Jones securities purchased on April 17, 2007. This transfer fell within the three-business day closing window for these purchases.

18. Prior to May 1, 2007, Defendants purchased an additional 215,000 shares for $7,847,887. $4,835,157 worth of these shares were purchased on

margin, using the 200,000 shares previously acquired as collateral for the margin loan. Defendants' reliance on a margin loan to purchase $4.8 million in additional Dow Jones shares suggests that Defendants were confident that the price of Dow Jones stock would rise.

19. On May 3, 2007, an unknown individual transferred $2,800,000 million into Defendants' Merrill Lynch Accounts from JP Morgan International Bank in Brussels, Belgium. This transfer fell within the three-business day closing window for Defendants' additional 215,000 purchase.

20. The closing price of Dow Jones stock ranged from $34.34 to $36.33 when Defendants made their purchases. Defendants' trades represented more than 3 percent of all of the shares of Dow Jones traded over the relevant period. The price and volume of trading in Dow Jones securities over this period is contained below:

| Date | Open | High | Low | Close | Volume | Adj Close* |
|---|---|---|---|---|---|---|
| 30-Apr-07 | 36.5 | 36.57 | 36.24 | 36.33 | 1,189,100 | 36.33 |
| 27-Apr-07 | 36.1 | 36.48 | 35.99 | 36.25 | 1,226,500 | 36.25 |
| 26-Apr-07 | 36.05 | 36.34 | 35.79 | 36.28 | 959,400 | 36.03 |
| 25-Apr-07 | 36.54 | 36.57 | 36 | 36.09 | 851,300 | 35.84 |
| 24-Apr-07 | 36.58 | 36.78 | 36.16 | 36.37 | 945,900 | 36.12 |
| 23-Apr-07 | 36.75 | 36.95 | 36.42 | 36.58 | 1,039,600 | 36.33 |
| 20-Apr-07 | 36.71 | 36.77 | 36.36 | 36.48 | 699,800 | 36.23 |
| 19-Apr-07 | 36.23 | 36.56 | 36.14 | 36.33 | 851,800 | 36.08 |
| 18-Apr-07 | 35.39 | 36.69 | 35.39 | 36.37 | 1,108,000 | 36.12 |
| 17-Apr-07 | 36.04 | 37.14 | 35.38 | 36.24 | 2,796,800 | 35.99 |
| 16-Apr-07 | 34.75 | 35.24 | 34.75 | 35.11 | 1,287,400 | 34.87 |
| 13-Apr-07 | 34.36 | 34.88 | 34.32 | 34.58 | 869,000 | 34.34 |

21. Prior to April 13, 2007, Defendants Merrill Lynch portfolio had no Dow Jones trading activity. Before the account activity described in Paragraph

12, Defendants' Merrill Lynch Accounts held assets totaling approximately $606,600. Consequently, the $15 million worth of purchases of Dow Jones securities increased the value of Defendants' portfolio by approximately 25 times. As of April 30, 2007, Dow Jones stock represented over 96 percent of Defendants' Merrill Lynch Accounts' value. In addition, Defendants did not actively trade in equities; the overwhelming majority of their portfolio from January 1, 2007 through April 30, 2007 consisted of fixed income instruments. Indeed, the only U.S. equity position Defendants held was a 2,500 share position in Intel, worth $53,750, as of April 30, 2007.

22. From January 1, 2006 to April 30, 2007, Dow Jones's closing stock price ranged from $32.12 to $39.77, with an average closing stock price of $35.14. Thus, the average closing stock price was below Defendants' average per share acquisition price of $36.30. Indeed, as shown in the chart below, Dow Jones stock had not exceeded a closing price of $40 per share since August 2005.



23. According to media reports, on April 17, 2007, News Corporation secretly made an unsolicited $60 per share bid for Dow Jones. At the close of business on April 17, 2007, Dow Jones shares closed at $36.24 on daily trading volume that was double the company's average. Accordingly, News Corporation's $60 bid represented a 67 percent premium over Dow Jones's then stock price. Neither Dow Jones nor News Corporation publicly announced this bid at this time.

24. During the month of April 2007, an unusually large number of Dow Jones options were traded. Specifically, during the month, more than 10,000 call options changed hands, compared with about 7,000 during exchanged January through March. Many of these options were exchanged following

News Corporation's secret bid for Dow Jones. The unusual options activity suggests that news of News Corporation's bid for Dow Jones leaked prior to its public announcement.

25. On May 1, 2007, Dow Jones stock opened at $37.12. News Corporations' bid for Dow Jones remained secret until approximately 11:13 a.m. on May 1, 2007, when the business cable channel CNBC reported the offer, citing undisclosed sources. Within minutes, the price of Dow Jones common stock skyrocketed $20.16 or 55 percent to $57.28 per share, when trading was halted around 11:22 a.m. By 12:00 noon on May 1, 2007, Dow Jones publicly confirmed what CNBC reported. Ultimately, Dow Jones stock closed at $56.20, up $19.08, on volume approximately 40 times its daily average. The chart below describes the performance of Dow Jones stock from April 30 to May 4, 2007.

| Date | Open | High | Low | Close | Volume | Adj Close* |
|---|---|---|---|---|---|---|
| 4-May-07 | 56 | 56.25 | 55.51 | 55.8 | 4,943,900 | 55.8 |
| 3-May-07 | 56.25 | 56.79 | 54.94 | 55.77 | 12,920,700 | 55.77 |
| 2-May-07 | 56 | 56.88 | 54.2 | 56 | 17,755,200 | 56 |
| 1-May-07 | 37.12 | 58.47 | 36.04 | 56.2 | 43,957,200 | 56.2 |
| 30-Apr-07 | 36.5 | 36.57 | 36.24 | 36.33 | 1,189,100 | 36.33 |

26. Based on the May 1, 2007 closing price, by purchasing in advance of the announcement of News Corporation's bid, Defendants' made unrealized profits of approximately $8 million on the 415,000 Dow Jones shares purchased between April 13 and April 30, 2007.

27. On Friday, May 4, 2007, Defendants placed a sell order for all of their Dow Jones shares. When making the sell order, Defendant Kan King Wong asked Merrill Lynch when the sales' settlement would take place. The sell order was executed in the prices and quantities described below:

| Trade Date | Buy/Sell | Qty | Price | Total |
|---|---|---|---|---|
| 5/4/2007 | Sell | 200,000 | 55.9394 | 11,187,880 |
| 5/4/2007 | Sell | 80,000 | 55.9228 | 4,473,824 |
| 5/4/2007 | Sell | 135,000 | 55.8884 | 7,544,934 |
| Total | | 415,000 | | 23,206,638 |

Profits from these sales equal $8,183,423. These sale transactions will settle on May 9, 2007, at which time Defendants will be able to withdraw the funds from their Merrill Lynch Accounts.

28. There is a substantial risk that Defendants, residents of Hong Kong, will dissipate the assets in their Merrill Lynch Accounts. Indeed, defendants have already sold all 415,000 shares of their Dow Jones stock. Moreover, it appears that the Defendants' borrowed substantially all of the funds used to purchase the Dow Jones shares; therefore; they are likely planning repay these amounts with the proceeds of the sales.

29. Currently, the stock is held in Defendants' accounts at Merrill Lynch, a U.S. based broker-dealer registered with the Commission. Once the cash proceeds enter the Merrill Lynch account there is a substantial likelihood that Defendants will move that money to a completely foreign entity beyond the jurisdiction of this Court. Indeed, Defendant Kan King Wong's inquiry about the settlement date implies that he is planning to

move the funds as soon as possible. The risk that these funds will soon be outside the jurisdiction of this court was exacerbated on May 5, 2007, when the Wall Street Journal disclosed the existence of the Commission's Dow Jones investigation.

30. The Commission makes this Application to: (i) preserve the status quo pending adjudication of the merits; (ii) ensure that any future judgment of this Court for disgorgement, prejudgment interest and penalties will not be rendered meaningless; and (iii) prevent the destruction or fabrication of evidence. To preserve the status quo and maintain these funds within the jurisdictional reach of this Court, the Commission believes an emergency action is necessary.

31. No previous request has been made for the relief sought in this Motion.

## Jurisdiction and Venue

32. The funds and proceeds that we seek to freeze are currently in a brokerage account at Merrill Lynch, a brokerage firm with offices throughout the country. The believed fraudulent insider trades in Dow Jones stock were transacted through markets and exchanges within the Southern District of New York, including the NYSE.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   May 7, 2007

*Jason M. Anthony*
Jason M. Anthony