UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>KAN KING WONG,<br>CHARLOTTE KA ON WONG LEUNG,<br>MICHAEL LEUNG KAI HUNG, and<br>DAVID LI KWOK PO,<br><br>Defendants. | Civil Action No.<br>1:07-cv-03628-SAS<br><br>First Amended Complaint |

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows against defendants Kan King Wong ("K.K. Wong"), Charlotte Ka On Wong Leung ("Charlotte Wong"), Michael Leung Kai Hung ("Michael Leung") and David Li Kwok Po ("David Li") (collectively the "Defendants"):

## I.   SUMMARY OF THE ACTION

1. This matter involves illegal tipping and trading in the securities of Dow Jones & Company, Inc. ("Dow Jones") in the weeks before the public disclosure on May 1, 2007 of an unsolicited $60 per share acquisition offer for Dow Jones (the "Offer") by News Corporation.

2. On March 29, 2007, News Corporation's Chief Executive Officer, Rupert Murdoch, met with Dow Jones's Chief Executive Officer, Richard

- 1 -

      Zannino. During this meeting, Mr. Murdoch told Mr. Zannino that News Corporation was considering making a proposal to acquire all of the outstanding shares of Dow Jones for $60.00 per share. Mr. Murdoch told Mr. Zannino that News Corporation planned to make this proposal directly to Dow Jones's board of directors.

3. David Li, a member of Dow Jones's board of directors, learned about the Offer from Dow Jones's general counsel on the evening of April 12, 2007 (Hong Kong time) and was thereafter informed about the status of the Offer for Dow Jones.

4. On the morning of April 13, 2007 (Hong Kong time), and in subsequent communications, David Li told his close friend and business associate, Michael Leung, about News Corporation's Offer for Dow Jones.

5. Based on this information, between April 13, 2007 and April 17, 2007, Michael Leung purchased 200,000 shares of Dow Jones stock for $7,175,328. Michael Leung purchased these shares at between $34.89 and $36.71 per share.

6. Michael Leung made his Dow Jones stock purchases in a Merrill Lynch account controlled by K.K. Wong (his son-in-law) and Charlotte Wong (his daughter). K.K. Wong and Charlotte Wong also helped Michael Leung execute these trades.

7. Between April 13, 2007 and April 18, 2007, K.K. Wong also purchased 2,000 shares of Dow Jones stock in his TD-Ameritrade account.

8. On April 30, 2007, Michael Leung purchased an additional 215,000 shares of Dow Jones, for $7,847,887 in the Wong's Merrill Lynch account. K.K. Wong and Charlotte Wong also helped Michael Leung execute these trades.

9. On May 1, 2007, at approximately 11:13 a.m., CBNC reported on News Corporation's Offer for Dow Jones. Dow Jones confirmed the CNBC story that afternoon. Prior to this announcement, Dow Jones shares were trading at about $37 per share. After the May 1, 2007 announcement of the Offer, the price of Dow Jones's stock rose 58 percent, or $20.95, to $57.28 per share.

10. On Friday, May 4, 2007, Michael Leung, with K.K. Wong's assistance, placed an order to sell all 415,000 Dow Jones shares. Based on the May 3, 2007, $55.77 closing price (the second full day after the Offer became public) Michael Leung's Dow trading profits were $8,121,335, and K.K. Wong's trading profits were $40,076.

11. By engaging in this conduct, David Li, Michael Leung and K.K. Wong violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; and K.K. Wong and Charlotte Wong aided and abetted Michael Leung's violations pursuant to Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e).

12. The Commission seeks as relief permanent injunctions against each of the Defendants, disgorgement of the profits derived by Michael Leung's and

K.K. Wong's illegal trading in Dow Jones securities and prejudgment interest, and insider trading penalties against Michael Leung, K.K. Wong and David Li.

## II.     JURISDICTION AND VENUE

13. The Commission brings this action pursuant to Sections 21(d), 21(e), and 21A of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78u(d), 78u(e), and 78u-1(c), and it seeks injunctions, disgorgement, civil penalties, and other appropriate relief.

14. This Court has jurisdiction over this action pursuant to Sections 21(d)(1), 21(e), 21A, and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d)(1), 78u(e), 78u-1, and 78aa.  In connection with the transactions, acts, practices, and courses of conduct alleged in this complaint, Defendants have, directly or indirectly, made use of the (a) means or instrumentalities of interstate commerce, (b) mails, or (c) facilities of a national securities exchange.

15. Venue is proper in this district pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this district.

## III.     DEFENDANTS

16. **David Li**, age 68, is a Hong Kong resident and was a director of Dow Jones until the completion of the merger between Dow Jones and News Corporation on December 13, 2007.  David Li does not currently serve as

an officer or director of any company traded on a U.S. stock exchange. David Li is a prominent figure in Hong Kong. He is the Chairman and Chief Executive Officer of the Bank of East Asia ("BEA") and a member of Hong Kong's Legislative Counsel and Executive Committee. In addition, David Li serves on dozens of public and private boards in Hong Kong. For more than 20 years, David Li and Michael Leung have had a close personal and professional relationship.

17. **Michael Leung**, age 65, is a Hong Kong resident, the father of Charlotte Wong, and the father-in-law of K.K. Wong. Michael Leung serves on the board of BEA's Canadian subsidiary. Michael Leung has been a close friend and business associate of David Li for over 20 years.

18. **Charlotte Wong**, age 34, is a Hong Kong resident who exercised joint-control over the Merrill Lynch account through which Michael Leung traded Dow Jones shares. She is also Michael Leung's daughter. Charlotte Wong formerly served as the Executive Director of China Resources People's Telephone Co. Ltd., a company whose stock was publicly traded on the Hong Kong stock exchange.

19. **K.K. Wong**, age 38, is a Hong Kong resident who exercised joint-control over the Merrill Lynch account through which Michael Leung traded Dow Jones shares. He is married to Charlotte Wong, and is therefore Michael Leung's son-in-law. K.K. Wong served as a director of a privately-held Hong Kong-based telecommunications company.

## IV.   OTHER RELEVANT ENTITIES

20. **News Corporation** is a NYSE-listed media conglomerate with properties including Fox Broadcasting Corporation, 20th Century Fox, and numerous magazines and newspapers. Rupert Murdoch is News Corporation's Chief Executive Officer.

21. **Dow Jones** is currently a subsidiary of News Corporation. At the time the trades at issue were made, Dow Jones was a NYSE-listed provider of business news and information with operations worldwide. During the relevant time period, Dow Jones's securities were registered with the Commission pursuant to Section 12(b) of the Exchange Act. Currently, Dow Jones publishes *The Wall Street Journal*, *Barron's*, *MarketWatch* and the *Far Eastern Economic Review*. It also owns Newswires, Factiva and the Dow Jones Indexes.

## V.   THE INSIDER TIPPING AND TRADING

### A.   News Corporation Makes an Unsolicited $60 Per Share Offer for Dow Jones

22. On March 14, 2007, News Corporation's Chief Executive Officer, Rupert Murdoch, contacted Dow Jones's Chief Executive Officer, Richard Zannino, to arrange a meeting.

23. At this meeting, which took place on March 29, 2007, Mr. Murdoch told Mr. Zannino that News Corporation was considering making a proposal to acquire all of the outstanding shares of Dow Jones for $60 per share.

Mr. Murdoch also told Mr. Zannino that News Corporation planned to make its proposal directly to Dow Jones's board of directors and that he intended to contact one of Dow Jones's outside directors, Harvey Golub, to discuss how to do so.

24. On April 11, 2007, Mr. Golub and Mr. Murdoch spoke about the mechanics of making the Offer to purchase Dow Jones. Mr. Golub suggested that Mr. Murdoch submit a letter to Dow Jones's board of directors formally making the Offer to acquire Dow Jones.

25. The non-executive members of Dow Jones's Board of Directors were informed of News Corporation's interest in Dow Jones between April 4 and April 12, 2007.

26. David Li learned of News Corporation's $60 per share Offer for Dow Jones on the evening of Thursday, April 12, 2007 (Hong Kong time) during a telephone call with Dow Jones's general counsel.

    **B.    Michael Leung Purchases 200,000 Shares of Dow Jones while in Possession of Material Nonpublic Information About News Corporation's Offer for Dow Jones**

27. The following morning, Friday, April 13, 2007 (Hong Kong time), David Li and Michael Leung traveled together on a flight to Shanghai, China. David Li conveyed material, nonpublic information concerning the News Corporation's $60 per share Offer for Dow Jones to Michael Leung on that flight.

28. Michael Leung called K.K. Wong shortly after arriving in Shanghai. K.K. Wong then began making telephone calls to Merrill Lynch to prepare for making Michael Leung's Dow Jones trades.

29. Between Friday, April 13 and Tuesday, April 17, 2007, Michael Leung, with the assistance of K.K. Wong, purchased 200,000 shares of Dow Jones for $7.175 million in the Wongs' Merrill Lynch Account. Leung purchased Dow Jones shares in the followings installments:

| Trade Date | Amount | Price | Cost Basis | Settlement Date |
|---|---|---|---|---|
| April 13, 2007 | 74,400 | $34.849 | $2,592,774 | 4/18/2007 |
| April 16, 2007 | 17,000 | $35.048 | $595,824 | 4/19/2007 |
| April 17, 2007 | 108,600 | $36.710 | $3,986,730 | 4/20/2007 |
| Total | 200,000 | | $7,175,328 | |

30. Throughout this period, K.K. Wong spoke with Merrill Lynch about, *inter alia*, the procedures for trading U.S. stocks, transactions fees, and the status of the numerous orders he had placed.

31. On the settlement dates—*i.e.* when the shares had to be paid for—Michael Leung wired funds into the Merrill Lynch Account as follows:

| Transfer Date | Amount | Description |
|---|---|---|
| 4/18/07 | $3,188,600 | Wire transfer from Michael Leung's BEA account |
| 4/20/07 | $3,986,727 | Wire transfer from All Profit Investments, a company controlled by Michael Leung |
| Total | $7,175,327 | |

32. Charlotte Wong filled out the wire transfer forms needed to cover her father's Dow Jones share purchases, obtained Michael Leung's signature on those forms, and then filed the wire transfer forms with the relevant financial institutions.

C. **News Corporation Puts the Offer in Writing and Submits it to Dow Jones's Board of Directors**

33. On April 17, 2007, the News Corporation board of directors formally approved the terms of a proposal to acquire all of the outstanding shares of Dow Jones's common stock at $60.00 per share.

34. Later on April 17, 2007, Mr. Murdoch sent a letter to Dow Jones presenting News Corporation's written proposal to acquire all of the outstanding shares of Dow Jones for $60 per share.

35. The Dow Jones board met to discuss the Offer on April 18, 2007. David Li was not present at this meeting.

36. On April 26, 2007, Mr. Murdoch sent another letter to Dow Jones, reaffirming News Corporation's interest in a transaction with Dow Jones.

37. The Dow Jones board met to discuss the Offer on April 27, 2007. David Li participated in this meeting.

38. In addition to his attendance at the April 27, 2007 board meeting, David Li received other periodic updates about the Offer by telephone and electronic mail.

39. During this period, David Li regularly communicated with Michael Leung. Contacts between Michael Leung and David Li during this period include at least one in person meeting and frequent telephone calls.

**D.    Michael Leung Purchases an Additional 215,000 Shares of Dow Jones**

40. When the U.S. markets opened on April 30, 2007, K.K. Wong bought, at Michael Leung's instructions, an additional 215,000 shares of Dow Jones at an average price of $36.374 per share (totaling $7,847,887) in the Wongs' Merrill Lynch account.

41. On the May 3, 2007 settlement date, Michael Leung, with Charlotte Wong's help, transferred an additional $2.8 million into the Merrill Lynch account. Charlotte Wong filled out the wire transfer forms, obtained Michael Leung's signature on those forms, and then filed the wire transfer forms with the relevant financial institution.

42. The rest of Michael Leung's 215,000 Dow Jones share purchase was financed with a $4.8 million margin loan from Merrill Lynch and cash from the Wongs' Merrill Lynch account. K.K. Wong and Charlotte Wong were required to sign the forms necessary to obtain the margin loan from Merrill Lynch. Prior to making these trades, the Wongs' Merrill Lynch account only had a small line of credit.

E.  **K.K. Wong Purchases 2,000 Shares of Dow Jones while in Possession of Material Nonpublic Information About News Corporation's Offer for Dow Jones**

43. From April 13 to April 30, 2007, Michael Leung had numerous telephone calls and other contacts with K.K. Wong. During some of these calls, Michael Leung gave K.K. Wong instructions regarding Michael Leung's purchases of Dow Jones stock.

44. From April 13 to 18, 2007, K.K. Wong purchased 2,000 Dow Jones shares in his TD-Ameritrade Account. He effected these transactions as follows:

| Trade Date | Amount | Price | Cost Basis | Settlement Date |
|---|---|---|---|---|
| 4/13/2007 | 500 | $34.83 | $17,430 | 4/18/2007 |
| 4/13/2007 | 500 | $34.85 | $17,435 | 4/18/2007 |
| 4/18/2007 | 500 | $36.57 | $18,299 | 4/23/2007 |
| 4/18/2007 | 500 | $36.58 | $18,299 | 4/23/2007 |
| **Total** | **2,000** | | **$71,464.36** | |

F.  **CNBC Reports on News Corporation's Offer for Dow Jones and the Value of Michael Leung's and K.K. Wong's Dow Jones Investments Skyrocket**

45. On May 1, 2007, Dow Jones stock opened at $37.12. That day at around 11:13 a.m., citing unidentified sources, CNBC reported that News Corporation had offered $60 per share for Dow Jones. Within minutes the price of Dow Jones common stock skyrocketed $20.16, or 54 percent, to $57.28 per share, before trading was halted around 11:22 a.m.

46. Around noon that day, Dow Jones issued a press release confirming its receipt of the unsolicited Offer from News Corporation. Trading resumed and Dow Jones stock closed at $56.20 on May 1, 2007.

47. On Friday, May 4, 2007, Michael Leung, with K.K. Wong's assistance, placed an order to sell all 415,000 Dow Jones shares in the Wongs' Merrill Lynch account. When K.K. Wong placed the sell order with Merrill Lynch, he asked when the funds would be available for withdrawal. Based on the May 3, 2007 $55.77 closing price (the second full day after the Offer became public), Michael Leung's Dow Jones purchases netted $8,121,335 in profits.

48. Based on the May 3, 2007 $55.77 closing price, K.K. Wong's Dow Jones purchases netted $40,076 in profits.

### G. The Acquisition of Dow Jones by News Corporation is Completed

49. From May 1, 2007 to July 17, 2007, Dow Jones and News Corporation continued to negotiate the terms of the proposed Offer. The negotiations focused on how to protect the journalistic integrity of Dow Jones's publications, including the *Wall Street Journal*, after a News Corporation acquisition.

50. On July 17, 2007, Dow Jones's Board of Directors voted to approve News Corporation's Offer. Thereafter, on August 1, 2007, Dow Jones announced

that it signed a definitive merger agreement with News Corporation, entitling shareholders to $60 per share in a deal valued at $5.6 billion.

51. On November 7, 2007, Dow Jones filed a definitive proxy statement and Dow Jones's shareholders voted in favor of the merger on December 13, 2007.

52. The merger between Dow Jones and News Corporation closed on December 13, 2007.

### H. David Li Owed Fiduciary Duties to Dow Jones and Its Shareholders

53. As a member of Dow Jones's Board of Directors, David Li owed fiduciary duties to Dow Jones and its shareholders.

54. David Li knew, or was reckless in not knowing, that he conveyed material nonpublic information to Michael Leung regarding the Offer by News Corporation to acquire Dow Jones.

55. David Li knew, or was reckless in not knowing, that Michael Leung would try to profit from this material nonpublic information by effecting transactions in Dow Jones securities.

### I. Michael Leung and K.K. Wong Inherited David Li's Duties To Dow Jones And Its Shareholders

56. Michael Leung possessed material nonpublic information about News Corporation's Offer to acquire Dow Jones at $60 per share when he purchased the 415,000 Dow Jones shares. Michael Leung knew, or was reckless in not knowing, that the information he received from David Li

- 13 -

regarding the Offer by News Corporation to acquire Dow Jones was material and nonpublic.

57. Michael Leung knew, or was reckless in not knowing, that David Li provided him with material nonpublic information regarding the Offer in violation of David Li's duties and obligations to Dow Jones's shareholders. Consequently, Michael Leung inherited David Li's duty not to trade on material nonpublic information about News Corporation's Offer to acquire Dow Jones.

58. K.K. Wong possessed material nonpublic information about News Corporation's Offer to acquire Dow Jones at $60 per shares when he purchased the 2,000 Dow Jone shares. K.K. Wong knew, or was reckless in not knowing, that the information he received indirectly from David Li regarding the Offer by News Corporation to acquire Dow Jones was material and nonpublic.

59. K.K. Wong knew, or was reckless in not knowing, that David Li indirectly provided him with material nonpublic information regarding the Offer in violation of David Li's duties and obligations to Dow Jones's shareholders. Consequently, K.K. Wong inherited David Li's duty not to trade on material nonpublic information about News Corporation's Offer to acquire Dow Jones.

    **F.**    **K.K. Wong and Charlotte Wong Knowingly and Substantially Assisted Michael Leung's Trading in Dow Jones**

60.    K.K. Wong and Charlotte Wong knew, or were reckless in not knowing, that Michael Leung's trading in Dow Jones was based on material nonpublic information obtained from David Li about News Corporation's Offer for Dow Jones.

61.    K.K. Wong and Charlotte Wong knew, or were reckless in not knowing, that David Li provided Michael Leung with material nonpublic information regarding the Offer in violation of David Li's duties and obligations to Dow Jones's shareholders.

62.    K.K. Wong and Charlotte Wong knew, or were reckless in not knowing, that they had a duty to refrain from trading on material nonpublic information about News Corporation's Offer for Dow Jones and an obligation not to assist Michael Leung in his trading on that information.

## VI.    FIRST CLAIM FOR RELIEF
**(Against defendants Michael Leung, K.K. Wong and David Li)**

**Tipping and Trading in Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

63.    Paragraphs 1 through 62 are re-alleged and incorporated herein by reference.

64.    In relation to Michael Leung's and K.K. Wong's aforementioned trading in Dow Jones securities, defendants Michael Leung, K.K. Wong and David Li, with scienter, directly or indirectly:

  a. employed devices, schemes, or artifices to defraud;

  b. made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

  c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon persons, including purchasers and sellers of securities;

  d. in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, of the mails, or the facilities of a national securities exchange.

65. By reason of the foregoing, defendants Michael Leung, K.K. Wong and David Li violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

### VII. SECOND CLAIM FOR RELIEF
### (Against defendants K.K. Wong and Charlotte Wong)

**Aiding and Abetting Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

66. Paragraphs 1 through 65 are re-alleged and incorporated herein by reference.

67. Defendants K.K. Wong and Charlotte Wong knowingly provided substantial assistance to Michael Leung's violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

68. By engaging in the conduct described above and pursuant to Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), defendants K.K. Wong and Charlotte Wong aided and abetted Michael Leung's violations, and unless restrained and enjoined, defendants K.K. Wong and Charlotte Wong will continue to aid and abet violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, plaintiff, the Commission, respectfully requests this Court:

**A.**

Permanently enjoin defendants from directly or indirectly violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

**B.**

Order defendants Michael Leung and K.K. Wong to disgorge ill-gotten gains derived from the unlawful trading alleged herein, plus prejudgment interest.

**C.**

Order defendants Michael Leung, K.K. Wong and David Li to pay civil insider trading penalties pursuant to Section 21A of the Exchange Act, 15 U.S.C. § 78u-1.

**D.**

Grant such other relief as the Court may deem just and appropriate.

Dated: February 5, 2008          Respectfully submitted,

/s/ Jan M. Folena

Jan M. Folena (pro hac vice)
Cheryl J. Scarboro
Reid A. Muoio (RAM-2274)
Jason M. Anthony
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F. Street, N.E.
Washington, D.C. 20549-6030
Telephone (202.551.4403) (Scarboro)
Facsimile (202.772.9346)